UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN ERIC GOULD,

　　　　　Plaintiff,

　v.

LAURIE MARINO, et al.,

　　　　　Defendants.

Case No.　19-cv-00015-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; DENYING REQUEST FOR DEFAULT JUDGMENT; DIRECTIONS TO PLAINTIFF; REFERRING CASE TO PRO SE PRISONER MEDIATION PROGRAM; ADMINISTRATIVELY CLOSING CASE**

Re: Dkt. Nos. 12, 23

　　　　Plaintiff filed this *pro se* action pursuant to 42 U.S.C. § 1983 regarding constitutional violations that occurred at Correctional Training Facility ("CTF") in Soledad, California, where he was previously housed.[1]  Now pending before the Court is plaintiff's request that the Court enter default judgment against defendants ABC Ventures LLC ("ABC") and Marino.  Dkt. No. 12.  There has been no response filed to this motion.  Also pending before the Court is the summary judgment motion filed by defendants CTF Warden Koenig, CTF Food Administrator Marino, CTF Food Manager Tucker, and California Department of Corrections and Rehabilitation Secretary Scott Kernan (collectively, "CTF Defendants").  Dkt. No. 23.  Plaintiff has filed an opposition, and the CTF Defendants have filed a reply.  Dkt. Nos. 25, 26.  For the reasons set forth below, the Court DENIES plaintiff's request for default judgment and DENIES the CTF Defendants' summary judgment motion.  Dkt. Nos. 12, 23.

//

---

[1] Plaintiff was paroled on June 18, 2019 and released into the custody of the Orange County Sheriff's Department.  Dkt. No. 13.  Currently plaintiff appears to be in custody of the Clark County Detention Center.  Dkt. No. 27.

1   | United States District Court Northern District of California

# I.      Request for Default Judgment

Plaintiff has filed a motion requesting default judgment against defendants Laurie Marino and ABC Ventures LLC.   Plaintiff argues that default judgment is appropriate because summons was served on defendants Marino and ABC on May 9, 2019, and these defendants failed to answer the complaint within the 21 days set forth in the summons.  Plaintiff argues that these defendants have been in default since May 30, 2019, and that their default constitutes acceptance of the facts alleged in the complaint and liability for $1.2 million in compensatory damages.  *See* Dkt. No. 12. No defendant has responded to this motion.

Plaintiff is correct that Fed. R. Civ. P. 12(a)(1)(A)(i) requires a defendant to serve an answer within twenty-one days after being served with the summons and complaint.  Fed. R. Civ. P. 12(a)(1)(A)(i).  Fed. R. Civ. P. 55(a) provides that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, i.e., answer as required by Fed. R. Civ. P. 12, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.  Fed. R. Civ. P. 55(a).  After entry of default, the Court may entertain a request for entry of default judgment pursuant to Fed. R. Civ. P. 55(b).  Where a clerk of court has not entered default against a defendant, a motion for default judgment against that defendant is improper. *Ardalan v. McHugh*, No. 13-CV-01138-LHK, 2013 WL 6212710, at *23 (N.D. Cal. Nov. 27, 2013); *see also e.g., Marty v. Green*, No. 2:10-CV-01823 KJM KJN PS, 2011 WL 320303, at *3 (E.D. Cal. Jan. 28, 2011) (finding that plaintiff failed to follow proper procedural steps to file a motion for default judgment where plaintiff failed to first seek a clerk's entry of default from the Clerk of the Court and denying motion for default judgment); *Norman v. Small*, No. 09CV2235 WQH NLS, 2010 WL 5173683, at *2 (S.D. Cal. Dec. 14, 2010) (denying default judgment because the clerk had not entered default).

Here, the Clerk of the Court has not entered default against either defendant Marino or defendant ABC Ventures LLC, so the motion for default judgment against these defendants is improper.  In addition, as explained below, defendant Marino timely and properly filed a waiver of reply after being served and the record is unclear as to whether ABC Ventures LLC has been served.

United States District Court
Northern District of California

### A.    Defendant Marino

Plaintiff incorrectly equates issuance of a summons for service by the United States Marshal with service of that summons.  Issuance of a summons means that the Clerk has issued that summons for the United States Marshal to serve.  *See, e.g.,* Dkt. No. 8.  An acknowledgement of receipt is an acknowledgement filed by the United States Marshal indicating that it received the service documents issued by the Clerk.  *See, e.g.,* Dkt. No. 10.  Neither the issuance of summons nor an acknowledgement of receipt indicates whether service has been effected on a defendant.

Defendant Marino was served on June 25, 2019.  *See* Dkt. No. 28 at 1.  Her waiver of reply,[2] filed four days later on June 29, 2019, was timely.  *See* Dkt. No. 14.  Entry of default against defendant Marino is not warranted here, and the Clerk of the Court has not entered default against defendant Marino.  The Court therefore DENIES plaintiff's request for entry of default judgment against defendant Marino.

### B.    Defendant ABC Ventures LLC

Here, the record is unclear as to whether defendant ABC Ventures LLC has been properly served with the summons and complaint.  Pursuant to Fed. R. Civ. P. 4(h), a corporation must be served either in the manner prescribed by Rule 4(e)(1) for serving an individual, or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.  Fed. R. Civ. P. 4(h).  According to the executed summons filed with the Court, the United States Marshal served defendant ABC Ventures LLC by personally serving, on May 15, 2018, Adam Clingerman, whom the United States Marshal identifies as the owner of ABC Ventures LLC.  Dkt. No. 28 at 5.  The Court cannot determine from the record whether the manner of service of the summons complies with the requirements set forth in Fed. R. Civ. P. 4(h).  For example, it is unclear if Mr. Clingerman is an officer or agent authorized to receive service of process.

---

[2] A waiver of reply pursuant to 42 U.S.C. § 1997e(g)(1) in lieu of an answer complies with Fed. R. Civ. P. 12(a)(1)(A)(i), and does not constitute an admission of the allegations contained in the complaint.  *See* 42 U.S.C. § 1997e(g)(1).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Because it is unclear if ABC Ventures LLC has been served, it is therefore also unclear if entry of default against defendant ABC Ventures LLC is warranted.  The Court therefore DENIES plaintiff's request for entry of default judgment against defendant ABC Ventures LLC.

Absent a showing of "good cause," if a defendant is not served within 90 days after the complaint is filed, the action is subject to dismissal without prejudice as to that defendant.  *See* Fed. R. Civ. P. 4(m).  Although a plaintiff proceeding *in forma pauperis* may rely on service by the Marshal, it is ultimately the plaintiff's responsibility to provide the Marshal with the correct information to effect service.  *See, e.g., Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987).  Accordingly, the Court orders as follows: within sixty (60) days of the date of this order, plaintiff shall either (1) file a motion for entry of default against ABC Ventures LLC with the Court, explaining how he has effected service on ABC Ventures LLC, or (2) submit to the Court sufficient information such that the Marshal is able to effect service.[3]  Failure to comply with this deadline will result in the dismissal of ABC Ventures LLC from this action without prejudice.

## II.     CTF Defendants' Motion for Summary Judgment

### A.     Complaint

The complaint makes the following allegations.

Between January 18, 2018 and August 2, 2018, plaintiff was enrolled in CTF's kosher meal program and, as part of that program, he was knowingly served expired and spoiled kosher meals.  Compl. at 5.  ABC Ventures LLC ("ABC") knowingly packaged expired and spoiled food in the kosher meal kits that were distributed CTF inmates.  Compl. at 8.  The kosher meal kits were labelled as packaged in, and fresh through, year 2018.  However, in reality, the contents of the meals were either dated 2017 or had an expiration date in 2017.  Compl. at 5.  Plaintiff informed correctional officers and staff on a daily basis that the kosher meals were expired and spoiled.  He also submitted formal grievances regarding these issues.  No action was taken.

---

[3] On May 29, 2019, Mr. Clingerman sent a letter to this Court, which was docketed at Dkt. No. 11, asking that the case be dismissed as to ABC Ventures LLC because the allegations were inaccurate, the meals provided complied with the contract specifications, and ABC Ventures LLC was no longer with the CDCR.  *See* Dkt. No. 11.  It does not appear that plaintiff received a copy of Mr. Clingerman's letter.  The Court will serve plaintiff with a copy of Dkt. No. 11 under separate cover.

Compl. at 5-6.

When plaintiff told correctional officers and kitchen staff that an item was "bad" or "tastes bad," he was not referring to the taste of the item. Rather, he was clearly conveying that the food was spoiled, expired, not stable, or not kosher. As a result of eating expired and spoiled food, plaintiff suffered from food poisoning on June 1, 2018. Compl. at 6; Dkt. No. 25 at 7.

Plaintiff was denied the ability to practice his religion because his body was defiled by eating expired and soiled food, which renders the food non-kosher. Compl. at 7-8. Plaintiff seeks $1.5 million in compensatory damages. Compl. at 3.

The Court screened the complaint and found that plaintiff's allegations stated cognizable claims for violation of the First Amendment's free exercise clause, the Eighth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against defendants ABC, CTF Warden Koenig, CTF Food Administrator Marino, CTF Food Manager Tucker, and California Department of Corrections and Rehabilitation ("CDCR") Secretary Scott Kernan in their individual and official capacities, with the RLUIPA claim only against defendants in their official capacities. Dkt. No. 7.

### B. Factual Background

The following facts are undisputed unless otherwise indicated.[4]

Plaintiff was incarcerated at CTF from January 2018 to March 2019. While at CTF, plaintiff was enrolled in the kosher diet program. Dkt. No. 1 at 5; Dkt. No. 23 at 8-9. During the relevant time period, defendant Marino was the Departmental Food Administrator, based in Sacramento, and responsible for setting the dietary menus for CDCR inmates; defendant Kernan was the CDCR secretary; defendant Koenig was the CTF Warden; and defendant Tucker was the

---

[4] Plaintiff argues that the Court must accept as true certain allegations set forth in his CDCR Forms 22s, specifically the Form 22s submitted as Exhibits F-34, F-35, F-37, F-38, F-42, F-43, F-44, F-45, F-47, F-49, F-50, and F-51. He argues that defendants waived their right to object to these allegations because he presented these Form 22s as affidavits to correctional staff; correctional staff accepted and signed these forms; and correctional officers never responded to the forms after their acceptance. He cites to the Uniform Commercial Code ("UCC") 3-410 in support of these arguments. Dkt. No. 25 at 4-5. These arguments fail. The CDCR Form 22 is not a discovery pleading. The failure to respond to, or deny, allegations made in a Form 22 has no evidentiary value or binding effect on parties or the Court in a litigation. In addition, the Uniform Commercial Code does not apply to, or govern, federal civil litigation.

United States District Court
Northern District of California

1    CTF Correctional Food Manager, responsible for supervising CTF food services.[5]  Robinson

2    Decl., ¶¶ 2-3; Tucker Decl., ¶¶ 2-3.

3            **1)      CTF's Kosher Meal Program**

4            The CTF kosher food program involves serving pre-packaged boxed meals prepared by a

5    kosher food vendor.  Dkt. No. 23-9 ("Robinson Decl."), ¶ 10.  The CDCR Department Food

6    Administrator in Sacramento selects the kosher food vendor and determines the kosher meal menu

7    for all CDCR institutions, including CTF.  Dkt. No. 23-3 ("Gash Decl."), ¶¶ 5, 6.  The vendor

8    providing kosher meals for CTF (and all CDCR institutions) during the relevant time period was

9    ABC.  Robinson Decl., ¶ 11.  ABC provides food manufactured by Bateman Foods, which

10   specializes in making frozen meals.  Robinson Decl., ¶ 11 and Exs. A-B.  The kosher meals

11   manufactured for CDCR inmates are manufactured at a Bateman facility in west Sacramento,

12   where there is a rabbi on-site full-time during the production of the kosher meals.  Robinson Decl.,

13   ¶ 11 and Exs. A-B.  The meals are certified kosher.  Gash Decl., Ex. A; Robinson Decl., Exs. A-B;

14   Dkt. No. 23-4 ("Tucker Decl."), ¶ 5.  Plaintiff argues that there is no evidence in the record that

15   the meals are kosher because the certification provided only indicates kosher certification for the

16   Bateman facility for the September 2018 – September 2019 period.

17           ABC delivers the kosher meals to CTF frozen, pre-cooked, and prepackaged on a freezer

18   truck.  Dkt. No. 23-13 ("Rubalcaba Decl."), ¶ 5; Tucker Decl., ¶ 7; Gash Decl., ¶ 10.  There are

19   two layers of packaging around the meal so that the food items remain sealed even if the outer

20   packaging is displaced when the meals are thawed or heated.  Rubalcaba Decl., ¶ 4; Tucker Decl.,

21   ¶¶ 7, 9; Gash Decl., ¶ 7.  The kosher breakfast and lunch meals are cold meals.  Tucker Decl., ¶ 8.

22   The kosher breakfast and lunch meals arrive at CTF packaged as follows.  Each item in the

23   breakfast and lunch kosher meals is individually sealed in plastic, and then placed in a plastic box

24   that is also sealed.  Gash Decl., ¶ 7; Tucker Decl., ¶¶ 5, 7.  The kosher dinners arrive packaged as

25   follows.  Monday through Saturday, the kosher dinners include (1) a TV-dinner type portion that

26

27   ───────────────

28   [5] Defendant Marino retired from the CDCR in April 2018, and defendant Kernan retired from the
     CDCR in August 2018.  Robinson Decl., ¶¶ 2-3; Tucker Decl., ¶¶ 2-3.  The remaining CDCR
     defendants remain employed with the CDCR.

United States District Court
Northern District of California

is heated in a microwave and (2) a cold portion.  Gash Decl. ¶ 9; Tucker Decl., ¶ 9.  Both the hot

and cold portions of the dinner arrive from the vendor in sealed packaging.  Gash Decl. ¶ 9;

Tucker Decl., ¶ 9.  On Saturdays, the entire kosher dinner is a cold meal, which also arrives in

sealed packaging.  Gash Decl. ¶ 9; Tucker Decl., ¶ 9.  Each sealed item has a Julian date stamped

on the label.  Gash Decl., ¶ 10 and Ex. A.  A Julian date indicates the date that the item is

manufactured and frozen.  Gash Decl., ¶ 10 and Ex. A.  Freezing stops the clock on any internal

"use by" date or code that is marked on any individual component inside the meal.  Gash Decl.,

Ex. A.  ABC explained the interplay between the Julian date and the "use by" date to CTF

correctional staff as follows:

> [I]f a bagel has a Use by date of 3/15/18 and the meal has a Julian date on the label of 052118, the Julian date on our label supersedes the use by date inside, as the Julian date indicates that the meal was manufactured and frozen on the 52nd day of 2018 (Feb 21st 2018), so the use by date inside the package stops counting forward on the Julian date (February 21st in this example).

Gash Decl., Ex. A.  ABC guarantees that the meals will be fresh for nine months after freezing.

Gash Decl., ¶ 10 and Ex. A.

Once the truck arrives at CTF, CTF staff visually inspect the kosher meals through the

layers of plastic and then move the kosher meals to a portable freezer for transport to a freezer in

the CTF main kitchen.  Rubalcaba Decl., ¶ 5; Tucker Decl., ¶ 7.  Upon arrival at the CTF main

kitchen, the kosher meals are inspected again, with the packaging left intact.  Gash Decl., ¶ 9;

Rubalcaba Decl., ¶ 4.  From the main kitchen, the meals are transported to satellite kitchens.

Tucker Decl., ¶ 7.  Kitchen staff take the meals from the satellite kitchens to the housing units and

distribute the meals to the correctional staff.  Tucker Decl., ¶ 7.  Correctional staff then deliver the

kosher meals to inmates who have been authorized to participate in the kosher food program.

Tucker Decl., ¶ 7.  CTF kitchen staff are instructed that they may not remove the seals or

packaging, and do not do so.  Gash Decl., ¶ 9; Rubalcaba Decl., ¶ 4; Tucker Decl., ¶ 7.

Kosher meals are kept separate from the regular meals and remain in the freezer until they

are ready to be heated and served.  Rubalcaba Decl., ¶ 5.  There is minimal preparation of the

kosher meals received at CTF because they arrive frozen, pre-cooked, and pre-packaged.  Tucker

Decl., ¶ 7; Gash Decl., ¶ 10.  The kosher meals are heated, prepared, and assembled in a part of the

1   kitchen that is reserved for kosher meals only.  Rubalcaba Decl., ¶ 5.  The kosher meals are never

2   thawed and refrozen.  Rubalcaba Decl., ¶ 5.  The kosher meals are never repackaged.  Gash Decl.,

3   ¶ 10.

4        Prior to being served, the kosher meals are again visually inspected through the layers of

5   plastic.  Rubalcaba Decl., ¶ 5.  In addition to the packaged kosher meals, inmates on the kosher

6   diet receive a carton of milk at breakfast, either a whole piece of fruit or a fresh vegetable at lunch,

7   and a salad and salad dressing at dinner.  Gash Decl., ¶¶ 7, 9; Tucker Decl., ¶ 9.

8        CTF follows the following policy regarding missing food items.  The inmate should inform

9   the floor officer at the time he receives his food tray or sack lunch that an item is missing.  Gash

10   Decl., ¶ 12; Tucker Decl., ¶ 10.  If the correctional officer confirms that the tray or sack is missing

11   an item, the officer should contact the kitchen and request the missing food item.  Gash Decl., ¶

12   12; Tucker Decl., ¶ 10.  The kitchen then provides the missing item to correctional staff who are

13   responsible for delivering the item to the inmate.  Gash Decl., ¶ 12; Tucker Decl., ¶ 10.

14        CTF follows the following policy regarding spoiled food items.  The inmate should inform

15   the correctional officer at the time he receives his food tray or sack lunch that a food item is

16   spoiled.  Gash Decl., ¶ 13; Tucker Decl., ¶ 11.  The correctional officer should contact the kitchen

17   and explain the issue.  Gash Decl., ¶ 13; Tucker Decl., ¶ 11.  The kitchen provides the inmate a

18   replacement of that particular missing item.  Gash Decl., ¶ 13; Tucker Decl., ¶ 11.  In providing

19   replacement items, the kitchen staff provides the inmate with the food items they were authorized

20   to receive under the kosher food menu, and does not provide them with extra or different kosher

21   food.  Gash Decl., ¶ 14; Tucker Decl., ¶ 11.

22        **2)**   **Plaintiff's Kosher Meal Diet at CTF**

23        Starting in February 2018, plaintiff noticed that food in his kosher meals was spoiled.  Dkt.

24   No. 23-2 at 29.  He would put the spoiled food aside and only eat the good food.  Dkt. No. 23-2 at

25   30-31.  Plaintiff kept the spoiled food as evidence.  Dkt. No. 23-2 at 30-31.  Plaintiff specifically

26   identifies the fish patty and chicken bologna as spoiled.  Dkt. No. 23-2 at 31-32.  On June 8, 2018,

27   plaintiff noticed that his lunch meat was moldy with green mold, and that the Julian date on the

28   package was 17351, meaning the product had expired on the 351st day of 2017, despite being

8

served nearly six months later.  Dkt. No. 23-2 at 36.  The cookie in this lunch was also stale.  Dkt. No. 23-2 at 37.  The next day, on June 9, 2018, kitchen staff member McKinley directly issued plaintiff expired food, specifically expired chicken bologna and a stale cookie.  Dkt. No. 23-2 at 39.  The spoiled and expired food caused plaintiff to vomit and suffer from diarrhea on unspecified dates.  The CDCR Defendants dispute that plaintiff was served expired or spoiled food.

### 3)   CTF Responses to Plaintiff's Form 22s and Grievances

On May 30, 2018, in response to plaintiff's May 30, 2018 Form 22 request alleging that he was being served expired and spoiled food, CTF Assistant Correctional Food Manager ("ACFM") Gash inspected the food served three days prior and found that the breakfast, lunch, and dinner were fresh, edible, and had no mold.  Gash Decl., ¶ 19 and Ex. A.  CTF ACFM Gash also sought clarification from ABC regarding the Julian codes and "use by" dates on the individual meal components and the overall meal package, and was informed by ABC that the Julian date superseded the "use by" date.  Gash Decl., Ex. A.

On June 27, 2018, in response to plaintiff's June 23, 2018 Form 22 request alleging that he had been served expired food from 2017 including chicken bologna which expired on December 18, 2017, and a chocolate chip cookie that expired on December 13, 2017, that the chocolate chip cookie was stale and hard, and that the meat contained mold and bacteria, CTF ACFM Gash informed plaintiff that the date on the chicken bologna was the date that the food was frozen by the vendor and not the date of expiration.  Gash Decl., ¶ 19 and Ex. E.

### C.   Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'"  *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).  The nonmoving party must show more than "the mere existence of a scintilla of evidence."  *In re Oracle Corp Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252).  "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id.* (citing *Liberty Lobby*, 477 U.S. at 252).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  *Celotex Corp*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### D.   Eleventh Amendment Immunity

The CDCR Defendants argue that plaintiff's official capacity claims are barred by the Eleventh Amendment.  Plaintiff does not address this argument.  The Eleventh Amendment bars from the federal courts suits against a state by its own citizens, citizens of another state or citizens or subjects of any foreign state.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985).  This Eleventh Amendment immunity extends to suits against a state agency, including the CDCR,

United States District Court
Northern District of California

*Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity), and to state officials sued in their official capacities, *see Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985), *see also Ex parte Young*, 209 U.S. 123, 159-60 (1908). *Ex parte Young* sets forth an exception to Eleventh Amendment immunity where the plaintiff is seeking prospective injunctive relief from continuing or impending state action which violates the federal constitution or a federal statute. *See Armstrong v. Wilson*, 124 F.3d 1019, 1026 (9th Cir. 1997). Here, plaintiff is seeking compensatory damages, not prospective injunctive relief. Plaintiff's official capacity claims are barred by the Eleventh Amendment. Accordingly, the Court GRANTS summary judgment in favor of the CDCR Defendants with respect to plaintiff's official-capacity claims, and DISMISSES with prejudice plaintiff's official-capacity claims. The only remaining RLUIPA claims in this action are against defendants in their official capacity. *See* Dkt. No. 7 (dismissing RLUIPA claims against defendants in their individual capacity because RLUIPA does not authorize suits against state actors, including prison officials, acting in their individual capacity) (citing to *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). With the dismissal with prejudice of plaintiff's official-capacity claims, there are no remaining cognizable RLUIPA claims.[6]

### E.      Eighth Amendment Claim

#### 1)      Legal Standard

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297). The Eighth Amendment governs the "treatment a prisoner receives in prison and the conditions under which he is confined . . ." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and

---

[6] The CDCR Defendants argue that the RLUIPA claims should be dismissed because plaintiff cannot seek injunctive relief regarding the allegedly unconstitutional kosher meals provided to him at CTF in 2018. Because plaintiff's RLUIPA claims have been dismissed with prejudice, the Court need not address this argument.

United States District Court
Northern District of California

personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). With respect to the first prong, the Eight Amendment "requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id.* (citation and internal quotations omitted). Food that is spoiled would be inadequate to maintain health. *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (holding that the provision of spoiled food violates the Eighth Amendment). With respect to the second prong, a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837. Neither negligence nor gross negligence will constitute deliberate indifference. *Id.* at 835-37 & n.4; *see also Estelle*, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence).

### 2) Analysis

The CDCR Defendants argue that they are entitled to summary judgment because there is no evidence that they caused plaintiff harm. Specifically, the CDCR Defendants argue that, in his deposition, plaintiff stated that, between January and September 2018, he suffered from food poisoning three or four times due to eating the kosher meals, but also acknowledges that starting in February 2018, he was no longer eating the kosher meals. Dkt. No. 23 at 19. The CDCR Defendants argue that there is also no evidence that plaintiff informed CTF officials that the kosher meals made him sick, noting that the Form 22s submitted by plaintiff in January and February 2018 do not mention food poisoning but only state that there is not enough food in the meals, the cookie is stale, and the fish patty tasted "really bad." Dkt. No. 23 at 19. Finally, the CDCR Defendants argue that plaintiff could have received replacement items for the spoiled food items, and his failure to do so was not due to defendants, but based on his own mistaken belief that he could not receive replacement items. Dkt. No. 23 at 19. In addressing the alleged First Amendment violation, the CDCR Defendants also argue that the food provided plaintiff was not expired, and that plaintiff incorrectly read the Julian dates. Dkt. No. 23 at 15-16.

United States District Court
Northern District of California

1       In his opposition, Plaintiff argues that he suffered food poisoning around June 1, 2018, as

2   indicated by his medical record which state that he was prescribed medication for an upset

3   stomach in June 2018.  Dkt. No. 25 at 6.  The remainder of plaintiff's opposition does not address

4   the CDCR defendants' arguments regarding the Eighth Amendment violations.[7]

5       The CDCR Defendants focus incorrectly on whether plaintiff was harmed by the expired

6   or spoiled meals.  The Ninth Circuit has held that prison officials violate the Eighth Amendment

7   when they provide inmates with spoiled food.  *Keenan*, 83 F.3d at 1091.  The Eighth

8   Amendment's requirement that prisoners are provided food adequate to maintain health arguably

9   also prohibits providing inmates with expired food.  *LeMaire*, 12 F.3d at 1456 (Eighth

10  Amendment requires prisoners receive food adequate to maintain health).

11      The Court finds that there is a triable issue of material fact as to whether plaintiff was

12  regularly provided with expired and spoiled food, and whether he was able to obtain a food

13  replacement that was not spoiled or expired.  The CDCR Defendants argue that the expiration

14  dates of individual items may be disregarded because these items were frozen which stops the

15  clock on any "use by" date or code, and that the correct expiration date is nine months after the

16  Julian date, which is the date the items were frozen.  However, as discussed below, plaintiff

17  provides evidence that, on multiple occasions, the expiration date on the individual items was

18  prior to the Julian date.  *See* Dkt. No. 1 at 76-97.

19      The Court has reviewed the photographs of the kosher meal items that plaintiff has

20  attached to his complaint.  Many of the photographs are of individual items and it is unclear when

21  these items were served to him or what the Julian date is for that particular item.[8]  For other items,

22  there are two codes listed on the packaging, neither of which appears to be an expiration date or a

23  Julian code, so it is unclear what the expiration date is for that item.[9]  Some of the items have a

---

[7] In his opposition, plaintiff raises new arguments as to why the meals provided him were not kosher.  *See* Dkt. No. 25.  The Court addresses these arguments in Section II.G, fn. 9.

[8] It is unclear when the items in plaintiff's exhibits F-57, F-58, F-59, F-62, F-63, F-66, F-67, F-68, F-70, F-71, F-72, F-73, F-74, F-75, F-76, F-77, F-78, F-79, F-80, F-81, F-82, F-85, F-86, F-87, F-88, F-90, F-91, F-92, F-93, F-94, and F-97 were frozen and when they were served to him.  *See* Dkt. No. 1 at 79-81, 84-85, 88-90, 92-104, 107-110, 112-14, 116, and 119.

[9] For example, the bagel photographed in exhibits F-60 and F-61 has "3770A" printed on the front of the packaging and "0118A" printed on the back.  *See* Dkt. No. 1 at 82-83.  Similarly, the bagel

United States District Court
Northern District of California

code that does not appear to be an expiration date or a Julian code, so it is unclear what the item's

expiration date is.[10]  However, the remaining photographs raise a triable issue of material fact as to

whether plaintiff was being regularly served items that had been frozen after their expiration date.

- Ex. F-54.  The lunch tray photographed in exhibit F-54 has the lot code 08118.  Dkt. No. 1 at 76.  Inside the lunch tray is a cookie with "17265" printed on top of the outer packaging and tortilla chips with a "best by" date of June 10, 2020.  Dkt. No. 1 at 76.  Neither party has clarified what the "lot code" is, but if the lot code is the Julian code, this meal was frozen on March 22, 2018 (the 81st day of 2018), but the cookie expired prior to freezing on September 22, 2017 (the 265th day of 2017).

- Ex. F-55.  The lunch tray photographed in exhibit F-55 has the lot code 07518.  Dkt. No. 1 at 77.  Inside the lunch tray is a cookie with "35617" printed on top of the outer packaging, and tortilla chips with a "best by" date of June 10, 2020.  Dkt. No. 1 at 77.  If the lot code is the Julian code, this meal was frozen on March 16, 2018 (the 75th day of 2018), but the cookie expired prior to freezing on December 22, 2017 (the 356th day of 2017).

- Exs. F-60 and F-61.  The bagel photographed in exhibits F-60 and F-61 has the lot code 03218 on the outer plastic packaging, and the inner plastic packaging has two numbers, "3770A" printed on the front of the packaging and "0118A" printed on the back.  *See* Dkt. No. 1 at 82-83.  If the lot code is the Julian code and one of the two numbers on the bagel's packaging is its Julian code or expiration date, this meal was frozen on February 1, 2018 (the 32nd day of 2018), but the bagel expired prior to freezing on either February 6, 2017 (the 37th day of 2017) or January 11, 2018 (the 11th day of 2018).

- Exs. F-64 and F-65.  The bagel photographed in exhibits F-64 and F-65 has the lot code 03218 on the outer plastic packaging, and the inner plastic packaging has two numbers, "3770A" printed on the front of the packaging and "0478A" printed on the back.  *See* Dkt. No. 1 at 86-87.  If the lot code is the Julian code and one of the two numbers on the bagel's packaging is its Julian code or expiration date, this meal was frozen on February 1, 2018 (the 32nd day of 2018), but the bagel expired either prior to freezing on February 6, 2017 (the 37th day of 2017) or after freezing on February 16, 2018 (the 47th day of 2018).

- Ex. F-69.  The bagel photographed in exhibit F-69 has the lot code 07918 on the outer plastic packaging, and the inner plastic packaging has "3567A" printed on the front.  *See* Dkt. No. 1 at 97.  If the lot code is the Julian code and the number on the bagel's packaging is its expiration date, this meal was frozen on March 20, 2018 (the 79th day of 2018), but the bagel expired prior to freezing on December 22, 2017 (the 356th day of 2017).

- Ex. F-93.  The chicken bologna photographed in exhibit F-93 has the lot code 07918 printed on the outer plastic packaging, and the inner plastic packaging has a sticker with "17351" printed on it.  *See* Dkt. No. 1 at 105.  If the lot code is the Julian code and the

---

photographed in exhibits F-64 and F-65 has "37077A" printed on the front of the packaging and "0478A" printed on the back.  *See* Dkt. No. 1 at 82-83.  It is unclear if these numbers/codes reference expiration dates or Julian codes, and which number/code is applicable to that food item.
[10] For example, the item in exhibit F-75 has the code "17M2266" printed on it; the applesauce photographed in exhibits F-80 and F-81 has the code "274171" printed on it; and the cornflakes photographed in exhibits F-88 has the code "3251712" printed on it.  *See* Dkt. No. 1 at 97, 102-03, and 110.  It is unclear if these numbers/code reference expiration dates or Julian codes.

United States District Court
Northern District of California

number on the chicken bologna's packaging is its expiration date, this meal was frozen on March 20, 2018 (the 79th day of 2018), but the chicken bologna expired prior to freezing on December 17, 2017 (the 351st day of 2017).

- Ex. F-84. The chicken bologna photographed in exhibit F-84 has the lot code 03218 printed on the outer plastic packaging, and the inner plastic packaging has a sticker with "17317" printed on it. *See* Dkt. No. 1 at 106. If the lot code is the Julian code and the number on the chicken bologna's packaging is its expiration date, this meal was frozen on February 1, 2018 (the 32nd day of 2018), but the chicken bologna expired prior to freezing on November 13, 2017 (the 317th day of 2017).

- Exs. F-93 and F-96. Both the turkey rolls photographed in exhibit F-93 and F-96 have the lot code 03218 printed on the outer plastic packaging, with a sticker on the inner plastic packaging with "17317" printed on it. *See* Dkt. No. 1 at 115, 118. If the lot code is the Julian code and the number on the turkey roll's packaging is its expiration date, this meal was frozen on February 1, 2018 (the 32nd day of 2018), but the turkey roll expired prior to freezing on November 13, 2017 (the 317th day of 2017).

- Ex. F-95. The chicken bologna photographed in exhibit F-95 has the lot code 07518 printed on the outer plastic packaging, and the inner plastic packaging has a sticker with "17352" printed on it. *See* Dkt. No. 1 at 117. If the lot code is the Julian code and the number on the chicken bologna's packaging is its expiration date, this meal was frozen on March 16, 2018 (the 75th day of 2018), but the chicken bologna expired prior to freezing on December 18, 2017 (the 352nd day of 2017).

Based on these exhibits, there is a triable issue of fact as to whether plaintiff was regularly served expired meals.

There is also a triable issue of fact as to whether plaintiff was served meals with spoiled food. Whether plaintiff was served meals with spoiled food items is related to, but distinct from, the question of whether he received meals with expired food. Even if the food items are not expired, they may still be spoiled. Serving an inmate spoiled items, regardless of whether the items are expired, may violate an inmate's rights under the Eighth Amendment.

Plaintiff alleges that, on multiple occasions, he was provided spoiled food, specifically a fish patty that had spoiled and chicken bologna with mold on it. Plaintiff informed correctional officers of the spoiled food, either by raising the issue verbally with correctional staff or filing a grievance. *See, e.g.,* Dkt. No. 1 at 51 (complaining that fish patty served on February 3, 2018, was spoiled); 52 (CDCR Form 22 mailed May 29, 2018 complaining of spoiled food); 55 (CDCR Form 22 mailed April 24, 2018, stating that minced fish was spoiled), 58 (complaining that he was served unhealthy fish and tortilla chips with mold on May 30, 2019), 64 (complaining that bologna served on June 8, 2018, was moldy), 71 (complaining that bread served on July 29, 2018, was

1    moldy).  ACFM Gash inspected plaintiff's food in response to plaintiff's May 31, 2018 CDCR

2    Form 22 and found no mold.  Gash Decl., ¶ 19 and Ex. A.  There is nothing in the record

3    indicating that plaintiff's food was inspected on the other occasions that he raised complaints.

4         The CDCR Defendants do not directly address plaintiff's allegations regarding receiving

5    spoiled food.  Instead, the CDCR Defendants argue that the overall process ensures fresh meals:

6    the meals arrive from a certified kosher vendor, the meals are packaged and frozen to maintain

7    freshness, CTF maintains the meals in a manner to preserve freshness, and CTF staff inspect the

8    meals multiple time prior to serving.  In addition, the CDCR Defendants state that ACFM Gash

9    inspected plaintiff's food in response to the May 31, 2018 Form 22 and found no evidence of

10   moldy food.

11        Plaintiff argues that visual inspection of food through two layers of plastic does not

12   guarantee that the food was not spoiled, and that he did receive spoiled food.

13        At summary judgment, the Court views the record in the light most favorable to the

14   plaintiff, assumes the truth of the evidence submitted by plaintiff, and does not make credibility

15   determinations.  The CDCR Defendants' arguments do not conclusively establish that plaintiff

16   was not served spoiled food.  Given that some food items appear to have expired two to three

17   months before the date they were frozen, it is plausible that food items could have spoiled prior to

18   arrival at CTF.  It is also unclear whether CTF prison officials could effectively determine that

19   food was not spoiled simply by conducting a visual inspection of the kosher meals through two

20   layers of plastic.  Viewing the record in the light most favorable to plaintiff, there is a triable issue

21   of material fact as to whether the CDCR Defendants served plaintiff spoiled food.

22        Finally, the CDCR Defendants argue that plaintiff was not harmed by the provision of the

23   expired or spoiled food items because he was able to obtain a replacement food item.  However,

24   the CDCR Defendants also argue that none of the food items were expired, yet the Julian coding,

25   as explained by the CDCR Defendants, indicates that some of the food items were expired.  Either

26   CDCR staff were unable to understand the coding on the meals or disregarded the coding.

27   Viewing the record in the light most favorable to plaintiff, there is therefore a triable issue of

28   material fact as to whether plaintiff could obtain a replacement food item that was neither spoiled

United States District Court
Northern District of California

nor expired.

Accordingly, the Court finds that plaintiff has established that there are triable issues of fact with respect to whether (1) he suffered an objectively, sufficiently serious deprivation, i.e. whether he was regularly provided with spoiled and expired food items for which he could not obtain replacements; and whether (2) the CDCR defendants possessed a sufficiently culpable state of mind when they repeatedly informed him that the food was neither spoiled nor expired and continued to provide him with items that were spoiled and expired. The Court therefore DENIES the CDCR Defendants' summary judgment motion with respect to plaintiff's Eighth Amendment claim.

**F.     First Amendment Claim**

In order to establish a violation of the First Amendment's free exercise clause, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). The CDCR Defendants do not dispute that providing plaintiff with expired or spoiled meals would burden his practice of Judaism without any justification reasonably related to legitimate penological interests.[11] Accordingly, because there are triable issues of material fact as

---

[11] In his opposition plaintiff raises the following new arguments regarding the alleged violation of his First Amendment rights. He argues that the meals provided were not kosher because the menu was not approved by a rabbi and only approved by the CDCR Food Administrator; and because the milk provided with kosher meals was not kosher despite the kosher label affixed to it. Dkt. No. 25 at 4, 8. Plaintiff also suggests that the practice of freezing meals to stop the clock on the expiration date may be illegal. Dkt. No. 25 at 10.

When a plaintiff raises an issue in his opposition to a summary judgment motion that is outside the scope of the complaint, the district court should construe this as a request to amend the pleadings out of time, pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, and freely grant such leave to amend when justice so requires. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). "'Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.'" *Id.* (citing *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)).

Here, while there is no indication of bad faith and plaintiff has not previously amended the complaint, the other factors weigh against allowing amendment. Most importantly, amendment to add these conclusory unsupported allegations would be futile. The kosher meals, including the individual items making up the meals, were produced in a kosher-certified facility and production was supervised by an on-site rabbi. It is unclear how Departmental Food Administrator Marino's approval of the kosher meal menu violated the kosher laws, or how her approval rendered the otherwise kosher meals non-kosher. Plaintiff's conclusory allegation that the milk served was not kosher despite the kosher "k" certification on the carton is unsupported. In addition, this case is

United States District Court
Northern District of California

to whether the meals to served plaintiff contained expired or spoiled foods, there is a triable issue of material fact as to whether plaintiff's First Amendment rights were violated.

### G.   Qualified Immunity

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). The doctrine thus intends to take into account the real-world demands on officials in order to allow them to act "'swiftly and firmly'" in situations where the rules governing their actions are often "'voluminous, ambiguous, and contradictory.'" *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citing *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.* To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

With respect to the second prong of the qualified immunity analysis, the Supreme Court has recently held that "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have

---

fully briefed. Challenging whether the meals were kosher on new grounds at this late date prejudices defendants. Accordingly, the Court DENIES leave to amend the complaint to add these allegations.

United States District Court
Northern District of California

United States District Court
Northern District of California

understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (citation and internal quotation marks omitted). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. (citation and internal quotation marks omitted). In conducting this analysis, the Court must determine whether the pre-existing law provided defendants with "fair notice" that their conduct was unlawful. *Id.* at 1777.

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citations omitted).  The inquiry of whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Id.*; *see, e.g., Pearson*, 555 U.S. at 243-45 (concluding that officers were entitled to qualified immunity because their conduct was not clearly established as unconstitutional as the "consent-once-removed" doctrine, upon which the officers relied, had been generally accepted by the lower courts even though not yet ruled upon by their own federal circuit).

The CDCR Defendants argue that they are entitled to qualified immunity because no constitutional violation occurred and that even if a constitutional violation occurred, a reasonable officer would have believed that his or her conduct was lawful.  However, as discussed above, there is a triable issue of fact as to whether a constitutional violation occurred.  And at the time in question, it was clearly established that serving an inmate expired or spoiled food after he had raised the issue multiple times violated the Constitution.  *See LeMaire*, 12 F.3d at 1456 (Eighth Amendment requires that inmates be served food that is adequate to maintain health); *Keenan*, 83 F.3d at 1091 (provision of spoiled food violates Eighth Amendment).  Making all reasonable

1    inferences in plaintiff's favor as required at this stage, the CDCR Defendants are not entitled to

2    qualified immunity based on the record currently before the Court, and any such entitlement will

3    depend on the resolution of disputed issues of fact.  *See Tolan v. Cotton*, 572 U.S. 660, 657 (2014)

4    (in determining whether a defendant is entitled to qualified immunity, the court must resolve

5    factual disputes in favor of the non-moving party).

6    **III.    Defendants CDCR Secretary Kernan and CTF Warden Koenig**

7          In his complaint, plaintiff made the following allegations tying defendants Kernan and

8    Koenig to the alleged violation of his constitutional rights.  The complaint alleged that defendant

9    Kernan "had previous and present knowledge of the issues as presented in this claim and failed to

10   take action which resulted in . . . plaintiff's civil rights being violated;" that defendant Kernan

11   failed to train defendant Koenig how to read the Julian coding; failed to create a policy whereby

12   all expired meal kits were returned to ABC Ventures LLC; and failed to create a policy where

13   inmates on the kosher meal plan could exchange the expired and spoiled meals.  Dkt. No. 1 at 7-8.

14   The complaint also alleged that defendant Koenig was notified several times of the spoiled and

15   expired food but continued to serve spoiled and expired kosher meals to inmates, and defendant

16   Koenig failed to train kitchen staff and correctional officers that expired and spoiled meal kits

17   should be returned to the vendor.  Dkt. No. 1 at 9.

18         Section 1983 liability may be imposed on an individual defendant only if the plaintiff can

19   show that the defendant proximately caused the deprivation of a federally protected right.  *See*

20   *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).  A supervisory defendant may be liable under

21   section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a

22   sufficient causal connection between the supervisor's wrongful conduct and the constitutional

23   violation.  *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012).  Even if a supervisory

24   official is not directly involved in the allegedly unconstitutional conduct, "[a] supervisor can be

25   liable in this individual capacity for his own culpable action or inaction in the training,

26   supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation;

27   or for conduct that showed a reckless or callous indifference to the rights of others."  *Starr v.*

28   *Baca,* 652 F.3d 1202, 1208 (9th Cir. 2011) (citation omitted).  However, for the supervisory

United States District Court
Northern District of California

20

1    official to be liable for the actions of his or her subordinates, the supervisor must know of the

2    unconstitutional conditions. *See, e.g., Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018)

3    (complaint failed to state claim of supervisory liability where there was no allegation that

4    defendant knew of the unconstitutional conditions and where there were only conclusory

5    allegations that supervisor promulgated unconstitutional policies and procedures which authorized

6    unconstitutional conduct of subordinates).

7         At the screening stage, when identifying cognizable claims, the court must liberally

8    construe a *pro se* complaint. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

9    1988). However, at the summary judgment stage, the question is whether there is a triable issue of

10   fact as to each individual defendant's involvement in the alleged constitutional violation. Here,

11   plaintiff has not proffered any facts which, viewed in the light most favorable to him, establish

12   that either Defendants CDCR Secretary Kernan and CTF Warden Koenig were aware of, or

13   otherwise liable for, the alleged constitutional violations.

14        With respect to defendant Kernan, according to an attachment to the complaint, plaintiff

15   submitted a grievance regarding the spoiled and expired food that was reviewed on behalf of

16   defendant Kernan at the third level of review. Dkt. No. 1 at 11-18. However, the appeal to the

17   third level was submitted on July 16, 2018, and the third level decision was issued on October 31,

18   2018. *Id.* According to plaintiff, the alleged constitutional violations happened between January

19   18, 2018 and August 2, 2018. Dkt. No. 1 at 5. The record does not establish, or raise a triable

20   issue of fact, as to whether defendant Kernan was aware of, or participated in, the alleged

21   constitutional violations when they occurred.

22        With respect to defendant Koenig, there is nothing in the record, outside of plaintiff's

23   conclusory allegations in the complaint, that defendant Koenig was notified or aware of the

24   constitutional violations or participated in them. The Form 22s and the grievance raising these

25   issues were reviewed by CTF Chief Deputy Warden Atchley, CTF Assistant Correctional Food

26   Manager Gash, defendant Tucker, and CTF correctional officials Angelioni and Rubalcaba. Dkt.

27   No. 1 at 18, 51, 55, 58-60, 65-67, 72, 74. "[M]ere allegation and speculation do not create a

28   factual dispute for purposes of summary judgment." *See Nelson v. Pima Community College*, 83

United States District Court
Northern District of California

1    F.3d 1075, 1081–82 (9th Cir. 1996).  In opposing a motion for summary judgment, a plaintiff may

2    not simply rely on his complaint, but must set out specific facts in declarations, depositions,

3    answers to interrogatories, or authenticated documents, that show that there is a genuine issue of

4    material fact for trial.

5          Viewing the record in the light most favorable to plaintiff, the Court finds that there is no

6    triable issue of fact as to whether defendants CDCR Secretary Kernan and CTF Warden Koenig

7    are liable for the alleged constitutional violations.  Defendants CDCR Secretary Kernan and CTF

8    Warden Koenig are DISMISSED from this action with prejudice.

9                                         **CONCLUSION**

10         For the foregoing reasons, the Court orders as follows.

11         1.     The Court DENIES plaintiff's request for default judgment against defendants

12   Marino and ABC Ventures LLC.  Dkt. No. 12.  Within sixty (60) days of the date of this order,

13   plaintiff shall either (1) file a motion for entry of default against ABC Ventures LLC with the

14   Court, explaining how he has effected service on ABC Ventures LLC, or (2) submit to the Court

15   sufficient information such that the Marshal is able to effect service.  Failure to comply with this

16   deadline will result in the dismissal of ABC Ventures LLC from this action without prejudice.

17         2.     The Court GRANTS in part and DENIES in part the CDCR Defendants' motion for

18   summary judgment.  Dkt. No. 23.  The Court GRANTS summary judgment in favor of the CDCR

19   Defendants with respect to plaintiff's official-capacity claims and RLUIPA claims.  The Court

20   DISMISSES with prejudice plaintiff's official-capacity claims and RLUIPA claims.  The Court

21   DENIES summary judgment with respect to plaintiff's Eighth Amendment and First Amendment

22   claims.

23         3.     The Court DISMISSES Defendants CDCR Secretary Kernan and CTF Warden

24   Koenig from this action with prejudice.

25         4.     The case is hereby REFERRED to Magistrate Judge Robert Illman for settlement

26   proceedings pursuant to the Pro Se Prisoner Mediation Program.  Such proceedings shall take

27   place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge

28   Illman's calendar will permit.  Magistrate Judge Illman shall coordinate a place, time and date for

1   one or more settlement conferences with all interested parties and/or their representatives and,

2   within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a

3   report thereon.  The Clerk is directed to serve Magistrate Judge Illman with a copy of this order

4   and to notify Magistrate Judge Illman that a copy of the Court file can be retrieved from the

5   Court's electronic filing database.

6        5.     In view of the referral, further proceedings in this case are hereby STAYED. The

7   Clerk shall ADMINISTRATIVELY CLOSE this case until further order of the Court. If the case

8   is not settled, the Court will enter a new scheduling order for further proceedings.

9        This order terminates Dkt. Nos. 12 and 23.

10       **IT IS SO ORDERED.**

11  Dated:  6/1/2020

12  

13  HAYWOOD S. GILLIAM, JR.
     United States District Judge

United States District Court
Northern District of California